UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HARWINDER SINGH KHINDA (A-216-176-957),

        Petitioner,

    v.

WARDEN OF CENTRAL VALLEY ANNEX, ET AL.,

        Respondents.

No. 1:26-cv-4466 DC-CSK

FINDINGS AND RECOMMENDATIONS

Petitioner Harwinder Singh Khinda (A-216-176-957), a native and citizen of India, has filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner entered the United States on December 29, 2017, and was found to have a credible fear of persecution by immigration officials.  Petitioner was initially detained, and on December 13, 2018, petitioner was released on a $20,000 bond ordered by an immigration judge.  Over seven years after his release on bond and while his asylum application is pending, on March 25, 2026, petitioner was arrested by local authorities in Oklahoma during a routine commercial truck inspection, despite there being no issues with the inspection when records revealed his immigration status.  Petitioner was then detained by immigration authorities, and he has been in

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

continuous detention since this date.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

## I.    FACTUAL BACKGROUND[2]

Petitioner entered the United States on December 29, 2017, and was detained by immigration authorities after his entry.  (ECF No. 1 at 4; ECF No. 7-1 at 5.)  Petitioner expressed a credible fear, and was placed in expedited removal proceedings. (ECF No. 7-1 at 6.)

After an asylum officer found that petitioner demonstrated a credible fear of persecution, on February 21, 2018, petitioner was issued a Notice to Appear and his removal proceedings were transitioned to Immigration and Nationality Act ("INA") Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings.[3]  (ECF No. 1 at 17-18; ECF No. 7-1 at 10-11, 16-33, 36-37.)  Also on February 21, 2018, the U.S. Department of Homeland Security ("DHS") issued a Notice of Custody Determination to release petitioner on a $40,000 bond, which petitioner requested review by an immigration judge.  (ECF No. 7-1 at 12.)  On April 9, 2018, an immigration judge denied the request for a change in custody status, and petitioner remained detained.  (ECF No. 7-2 at 1.)

On July 13, 2018, petitioner filed an asylum application, which is pending.  (ECF No. 1 at 4.)  Petitioner applied for temporary work authorization and his application was approved.  (ECF No. 1 at 5, 24.)

On December 11, 2018, an immigration judge ordered petitioner released on a $20,000 bond, and he was released on December 13, 2018 after the bond was posted.  (ECF No. 1 at 4, 19, 20; ECF No. 7 at 2; ECF No. 7-2 at 2.)

On March 25, 2026, local law enforcement was conducting a commercial truck inspection

---

[2]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 15.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  Respondents do not contest petitioner's factual allegations.  (See ECF No. 7.)

[3]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

2

in Oklahoma and petitioner was stopped for this inspection while driving a commercial truck. (See ECF No. 1 at 5; ECF No. 7 at 2; ECF No. 7-1 at 2.)  Though there was no violation related to the truck, petitioner was arrested when records revealed that he entered the United States illegally, was taken to a U.S. Immigration and Customs Enforcement ("ICE") office, and was detained by ICE.  (See ECF No. 1 at 5; ECF No. 7 at 2; ECF No. 7-1 at 2.)

Petitioner was not provided a pre-deprivation hearing or pre-deprivation notice of the revocation of his bond or the basis for his detention.  (See ECF No. 1.)  Petitioner has been in continuous detention since March 25, 2026.  (Id.)  Petitioner has no criminal history and has not violated any conditions of his release, which respondents do not dispute.  (See ECF No. 1 at 5; ECF No. 7.)  Respondents further do not contest petitioner's factual allegations.  (See ECF No. 7.)

**II.      PROCEDURAL BACKGROUND**

On April 9, 2026, petitioner filed his first petition for writ of habeas corpus in the Northern District of Texas because he was detained within that district at the time that he filed his habeas petition.  (See ECF No. 1 at 5; Singh Khinda v. Mullin et al., No. 1:26-cv-00170-H (N.D. Tex.).[4])  Petitioner was transferred to the Central Valley Annex, which is located in the Eastern District of California.  Given his transfer, on June 8, 2026, petitioner filed a motion to voluntarily dismiss his habeas petition in the Northern District of Texas.  Singh Khinda v. Mullin et al., No. 1:26-cv-00170-H (N.D. Tex.) (ECF No. 10).

After filing his motion to dismiss his first habeas petition, on June 10, 2026, petitioner filed the instant petition in this district where he is currently detained.  (ECF No. 1.)  On June 20, 2026, respondents filed an answer to the petition, and on June 24, 2026, petitioner timely filed a reply.  (ECF Nos. 7, 9.)  Briefing is now complete.

As of the filing of these findings and recommendations, no action has been taken by the

---

[4]  This Court takes judicial notice of the docket and filings in Singh Khinda v. Mullin et al., No. 1:26-cv-00170-H (N.D. Tex.).  See Fed. R. Evid. 201(b); Bennett v. Medtronic, Inc., 285 F.3d 801, 802 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (internal quotation omitted).

3

district court in the Northern District of Texas case.

**III.    LEGAL STANDARDS**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court. The provisions of Rule 4, which are applicable to a petition filed pursuant to 28 U.S.C. § 2241, provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must not dismiss the petition and direct the clerk to notify the petitioner." The Advisory Committee Notes to Rule 4 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to respondents' motion to dismiss, or after an answer to the petition has been filed.

**IV.    DISCUSSION**

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner challenges his continued detention based on the violation of the following: (1) the Fifth Amendment due process clause; and (2) the INA. (ECF No. 1 at 9-12.) Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that this second action should be dismissed

4

as the second filed case; administrative exhaustion applies; and no constitutional relief is warranted because 8 U.S.C. § 1226(a) applies and affords adequate procedure.  (ECF No. 7.)

### A.    Proper District for Habeas Petition

Petitioner has properly filed the instant habeas petition in this district, the district of his physical confinement.  See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); Doe v. Garland, 109 F.4th 1188, 1195 (9th Cir. 2024).  The Court further notes that the procedural history establishes that petitioner is following Supreme Court guidance where petitioner filed his first habeas petition in the Northern District of Texas based on his physical confinement at the time of the filing of his habeas petition on April 9, 2026; after petitioner was transferred to a different judicial district, filed a motion to dismiss this first petition on June 8, 2026; and finally, filed this second habeas petition on June 10, 2026 in the correct judicial district where petitioner is confined.  (See Docket; Singh Khinda v. Mullin et al., No. 1:26-cv-00170-H (N.D. Tex.), Docket.)

Respondents' arguments that this case should be dismissed or stayed under the first-filed doctrine fail.  (See ECF No. 7 at 2-3.)  Respondents cite other civil cases that are completely different from habeas cases, which have a specific jurisdictional requirement that the habeas petition be filed in the district of confinement.  (See id.)  Further, respondents fail to note an important factor regarding the conservation of judicial resources and potential for duplicate outcomes—no action has been taken by the district court in Singh Khinda I beyond setting a briefing schedule, which has also occurred in this district.  The Court notes its concern that respondents are taking a position contrary to the government's position in other immigration habeas cases where the government has sought to dismiss habeas petitions like Singh Khinda I after the petitioner has been transferred to a different judicial district and is no longer confined in the judicial district where the government seeks dismissal, suggesting potential forum shopping.

### B.    Exhaustion

Respondents argue that the petition should be dismissed because petitioner has not exhausted his administrative remedies.  (ECF No. 7 at 1, 3 (citing Leonardo v. Crawford, 646 F.3d 1157, 1159-61 (9th Cir. 2011)).  Petitioner argues that exhaustion should be waived.  (ECF No. 9 at 4-5.)

28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). Because exhaustion is not required by statute, it is not jurisdictional. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54-55 (1995) (citing Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir. 1987)). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may "determine whether to excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court." Id. "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal citation and quotation marks omitted). However, the court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. Laing, 370 F.3d at 1000-01 ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available.").

The Court concludes that the prudential exhaustion requirement should be waived because irreparable injury may occur without immediate judicial relief. See Laing, 370 F.3d at 1000-01; Guzman v. Andrews, No. 1:25-CV-01015-KES-SKO (HC), 2025 WL 2617256, at *3 (E.D. Cal. Sept. 9, 2025). The Court proceeds to the merits of the habeas petition.

### C.    Due Process Claim

The parties agree that petitioner is detained pursuant to 8 U.S.C. § 1226(a). (See ECF Nos. 1, 7, 9.) 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v.

6

Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  Labrador-Prato v. Noem, No. 1:25-cv-01598-DC-SCR, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).

"When a noncitizen has been placed on bond or conditional parole pursuant to section 1226(a), '[t]he Attorney General at any time may revoke a bond or parole ..., rearrest the alien under the original warrant, and detain the alien.'  8 U.S.C. § 1226(b).  The [Board of Immigration Appeals ("BIA")] has placed the following limitation on this authority: 'where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance.'  Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018))."  J.C.E.P. v. Wofford, No. 1:25-CV-01559-EFB, 2026 WL 809865, at *5 (E.D. Cal. Mar. 24, 2026) (granting habeas petition and finding due process violation where noncitizen released on parole who complied with release conditions and had no criminal infractions was re-detained without notice and opportunity to be heard before revocation of parole under § 1226(b)); see also Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 927-28 (N.D. Cal. 2025).

Respondents argue petitioner's due process claims fail because § 1226(a) provides adequate process and "Petitioner has yet to use it" where he "has not sought a fist [immigration judge] bond hearing."  (ECF No. 7 at 4, 5.)  Respondents' argument fails for multiple reasons.  First, respondents' argument would be applicable if this habeas petition had been brought at an

earlier procedural posture after petitioner was initially detained in December 2017 pursuant to § 1226(a) and before he received a bond hearing and was released by an immigration judge in December 2018.  After petitioner expressed and was found to have a credible fear of persecution by immigration officials on February 21, 2018, DHS determined petitioner should be released on bond.  Petitioner properly sought custody re-determination before an immigration judge, and was released on December 13, 2018 by an immigration judge on a significantly reduced bond from DHS' initial custody determination and after petitioner posted the $20,000 bond ordered.  The current procedural posture is critically different.

Second, respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).  The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may

8

entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release on an immigration judge's bond order are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over seven years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. Petitioner also sought and obtained work authorization from immigration officials. This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest. In addition, petitioner was released pursuant to an immigration judge's bond release order, after an individualized consideration and after petitioner posted the bond ordered. See 8 C.F.R. §§ 1003.19, § 1236.1(d). In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as

he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4-5; Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th at 1206; see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over seven years, petitioner was free from custody before his re-detention.  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. July 24, 2025) (in the past five years, petitioner developed

"extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.").

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF No. 7.) In addition, respondents do not contend that petitioner has a criminal record or that petitioner violated any conditions of his release. (See id.) Here, petitioner has been detained since March 25, 2026, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 19, 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released by an immigration judge on bond over seven years ago, he lived in the country on release for over seven years, he complied with his release conditions, he has no criminal record, and the government has not identified any changed circumstances or reason for the revocation of petitioner's bond. See Pinchi, 792 F. Supp. 3d at 1036; Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981); J.C.E.P. v. Wofford, 2026 WL 809865, at *5.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a

11

hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.

Petitioner was released by an immigration judge on bond, and immigration authorities detained petitioner after he had been on release for over seven years without any process or procedure, let alone consideration of changed circumstances or any apparent justification. Respondents do not dispute, as demonstrated by the extensive records they submitted (see ECF Nos. 7, 7-1, 7-2, 7-3), that petitioner has no criminal history, and has not violated his release conditions during his over seven years of release, was authorized to work. Petitioner was apparently working when he encountered local law enforcement during a routine commercial vehicle inspection, and the only reason petitioner was detained by ICE was because local law enforcement arrested petitioner during the commercial vehicle inspection upon discovering that he was a noncitizen, despite there being no issues with the commercial vehicle inspection, no criminal conduct, and despite the fact that petitioner was lawfully present in the United States on an immigration judge's bond release order. Respondents proffer no reason for the revocation of bond or demonstrate any exercise of the government's discretion pursuant to § 1226(b) to revoke bond, let alone changed circumstances to justify revoking an immigration judge's bond order. (See ECF No. 7.)

Other district courts are in accord. See, e.g., J.C.E.P. v. Wofford, 2026 WL 809865, at *7

(granting habeas petition and finding due process violation where noncitizen released on parole who complied with release conditions and had no criminal infractions was re-detained without notice and opportunity to be heard before revocation of parole under § 1226(b)); Guzman v. Andrews, No. 1:25-CV-01015-KES-SKO (HC), 2025 WL 2617256, at *8 (E.D. Cal. Sept. 9, 2025) (granting preliminary injunction and ordering release for due process violation where noncitizen was re-detained without a bond hearing after he was released on bond by an immigration judge and where noncitizen was convicted of misdemeanor battery while on bond); Pena Becerra v. Sparks, No. 2:26-CV-00212-JNP-DBP, 2026 WL 915439, at *6 (D. Utah Apr. 3, 2026) (granting habeas petition and ordering immediate release for due process violation where bond revoked pursuant to § 1226(b) without a pre-deprivation hearing after government claimed petitioner violated his release conditions when petitioner was arrested for a traffic violation and possession of marijuana); O.F.C. v. Almodovar, No. 25-CV-9816 (LJL), 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("To be sure, although Section 1226(b) does not itself require a pre-deprivation hearing, it does still require some process—namely, that there be an individualized determination regarding the noncitizen's dangerousness or risk of flight. The statute indicates that bond 'may' be revoked, and '[t]he Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make 'some level of individualized determination.' In the context of bond revocation under Section 1226(b), any individualized determination requires not only a finding of dangerousness or risk of flight, but also of changed circumstances given that an immigration official or judge has necessarily previously found that the individual does not pose a risk of danger or flight." (internal citations omitted)).

In addition, this district court "has found that the Due Process Clause requires that, in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the government must provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered." Galindo Vega v. Warden, Golden State Annex Det. Facility, No. 1:26-CV-03604 DC SCR, 2026 WL 1707804, at *1 (E.D. Cal. June 12, 2026). Accordingly, the Court finds that petitioner is entitled to relief on his due process claim.

13

**D.      Petitioner's Other Claim for Relief**

Because the Court recommends granting the petition on the due process claim (claim one), the Court need not address petitioner's remaining claim (claim two) in the petition.  See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").  Petitioner is entitled to the habeas relief he seeks based on the Court's findings and recommendations as to the due process claim (claim one).

**V.      RESPONDENTS' REQUEST TO DISMISS**

Though respondents did not file a formal motion to dismiss, respondents request dismissal in their opposition.  (See ECF No. 7.)  For the reasons set forth above, respondents' request to dismiss the petition should be denied.

**VI.     CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondents' request to dismiss (ECF No. 7) be DENIED.

3.  Respondents be ordered to IMMEDIATELY release petitioner Harwinder Singh Khinda (A-216-176-957) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

4.  Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  Petitioner shall be

14

allowed to have his counsel present at any such hearing.  This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

5.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 17, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/khin.4466.26.imm.frs

15